UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BEVERLY A. CUMMINGS,<br><br>   Plaintiff,<br><br>   vs.<br><br>MICHAEL J. ASTRUE, Commissioner, Social Security Administration,<br><br>   Defendant. | Case No: C 08-4041 SBA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Beverly A. Cummings ("Cummings") appeals the decision of the Social Security Administration's denial of her application for Social Security Income ("SSI") benefits. The parties are before the Court on cross-motions for summary judgment. Having read and considered the papers submitted, and being fully informed, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross motion for summary judgment. Pursuant to Federal Rule of Civil Procedure 78(a), the Court resolves the motion without oral argument.

## I. BACKGROUND

### A. PROCEDURAL SUMMARY

Cummings applied for SSI benefits on November 18, 2004, based on a disability that began on September 1, 2002. Tr. 68. Plaintiff's claim was denied initially on March 21, 2005, Tr. 26, and upon reconsideration on June 24, 2005, Tr. 33. Cummings filed an untimely request for a hearing on August 29, 2005, but showed good cause for the delay. Tr. 17.

Administrative Law Judge Richard P. Laverdure ("ALJ") heard Cummings' claim on November 7, 2006 in Oakland, California, and upheld the denial of benefits in a decision, dated December 13, 2006. Tr. 23. The ALJ determined that Plaintiff had not engaged in substantial activity since her alleged onset date, and had severe impairments. Tr. 18-19. However, the

ALJ also found that none of Cummings' impairments met or medically equaled one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1.  Tr. 19.  Moreover, the ALJ determined Cummings could perform certain work involving little public contact or heavy lifting, and sitting or standing for only six hours of an eight-hour workday.  Tr. 19.

On June 23, 2008, the Appeals Council denied Cummings' request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 6, Notice of Appeals Council Action.  On August 25, 2008, Cummings filed for review of the Commissioner's decision in this Court.  Plaintiff filed her Motion for Summary Judgment [Docket No. 19] on May 21, 2009 and the Defendant filed a Cross Motion for Summary Judgment [Docket No. 20] on June 18, 2009.  The respective motions are now before the Court.

**B.   FACTUAL HISTORY**

**1.   Plaintiff's Disability Claim**

In her application for SSI benefits, Cummings alleged that she became disabled and unable to work on September 1, 2002, Tr. 68, due to hyperthyroidism (or Graves' disease), chronic fatigue, and severe depression.  Tr. 152.

At her hearing, Cummings testified that she stopped working in 2002 after she was diagnosed with hypertension, Graves' disease, high blood pressure, high heart rate, and diabetes.  Tr. 314.  She also testified that she had memory problems at work and frequently got tired on the job.  Id.  When asked about her history of substance abuse, Cummings said she last used cocaine in 1998 or 1999 because she wanted to improve her life.  Tr. 315.  Cummings' husband is disabled and does not work, receiving veteran's benefits.  Tr. 315-316.

Cummings testified about her job history over the last twenty years.  She worked at Pacific Bell for approximately twenty-three years and was a supervisor when she left.  Tr. 316.  She also worked as a receptionist and performed clerical work.  Tr. 317.

Cummings listed diabetes as one medical problem that prevents her from working.  Tr. 321.  She initially took medication to control her diabetes, but stopped the medication in 2003 because it gave her nausea, headaches, and lightheadedness.  Tr. 322.  Without medication to

control her diabetes, Cummings tried to use diet to control blood sugar, but only with minor success.  Id.

Testifying as to the problems she experiences from Graves' disease, Plaintiff stated even with medication she feels tired all the time, and does not feel rested when she wakes up in the morning.  Tr. 323.  She takes naps during the day, and estimated spending about three continuous hours of the day either napping or lying down.  Id.  Cummings also stated she experiences intermittent dizziness twice a week due to the Graves' disease.  Tr. 324.

Cummings further testified that she feels depressed most of the week and takes Zoloft to help her cope with her depression.  Tr. 325-326.  In addition, she has short-term memory loss, which results in trouble retaining information, forgetting what someone has just told her in a conversation or what she just read from a book.  Tr. 325-326.  Her depression and memory loss has caused Plaintiff to have low energy levels and she has little interest in activities or spending time with friends.  Tr. 326.  Cummings testified she has trouble following through with the activities she does undertake; for instance, forgetting where she put ingredients while preparing a meal.  Tr. 327.  There are weeks when Cummings does not leave her home at all, but performs activities within her home such as cleaning.  Tr. 328.  She rarely leaves the home alone, but attends church every Sunday and does the grocery shopping with the help of her husband.  Tr. 329

Asked what would prevent her from going back to work, Cummings stated her short-term memory loss would be the biggest factor.  Id.  Cummings also claimed vision loss attributable to diabetes would be a problem as well; her vision has been affected for two or three years and she no longer drives a car.  Tr. 330.  Moreover, Cummings stated she did not think she had the energy level to do a job eight hours a day, five days a week.  Tr. 331.

### 2. Medical Evidence

On September 17, 2003, Cummings presented to the Alameda County Medical Center, Highland Campus in Oakland, California with thyroid, diabetes, and breathing problems.  Tr. 246.  She was released that same day with a diagnosis of diabetes mellitus and goiter, and received a prescription of Glyburide.  Tr. 253.

Beginning in 2003, Cummings sought treatment for her condition from Dr. Claire Horton at La Clinica de la Raza in Oakland, California. Tr. 221-230. In a progress note dated December 21, 2004, Dr. Horton noted, "Told pt. I could see why can't work now b/c of fatigue but I think it's 2° to poorly controlled Grave's & DM. If pt. will keep apps, con't Parpazole & go to lab regularly, might feel better & be able to work." Tr. 209. On June 29, 2004, Cummings reported her goiter was reduced in size and no longer uncomfortable. Tr. 216.

In February 2005, Cummings reported she felt depressed. Dr. Horton offered to refer her to counseling, but Cummings declined. Dr. Horton also noted that her Graves' disease might be resolving. In August 2005, Dr. Horton encouraged Cummings to take her Zoloft regularly and seek counseling. Tr. 296. Cummings stated that she wished to continue her disability, and Dr. Horton told her it was essential to deal with her depression and fatigue in the next 3 to 6 months or else she could not extend her disability any further. Cummings also complained of problems with her goiter and that the goiter hindered her breathing. Id. Dr. Horton noted Cummings' diabetes and thyroid were under very good control. Id.

Cummings' diabetes progress notes of September 19, 2005 indicated she had excessive thirst, excessive urination, excessive appetite, fatigue, and blurred vision. Tr. 293. On August 7, 2006, Cummings reported that her primary complaint was extreme fatigue, along with symptoms of depression. Tr. 284. Dr. Horton again offered to refer Cummings for counseling services, and Cummings again declined. Id. Dr. Horton noted that she was not sure whether Cummings was taking her Zoloft every day as prescribed. Id. Moreover, Cummings' diabetes and blood pressure were under good control. Id.

On February 17, 2005, Cummings underwent a psychological evaluation by Warren T. Taylor, Ph.D. Dr. Taylor observed that Cummings' affect was flat and her mood was moderately sad. Tr. 167. Dr. Taylor further observed that Cummings had trouble with short-term memory loss and that her judgment was somewhat apathetic and poor in relation to hypothetical questions. Tr. 168. In terms of her daily functioning, Cummings told Dr. Taylor that on an average day she cleans the house, watches her granddaughter, does the laundry, and does the shopping most of the time. Tr. 170. In intelligence tests, Cummings rated in the

borderline to average range, indicating low distractibility, low anxiety, and easy contact with one's environment.  Tr. 171.  In memory tests, Cummings scored in the low-average to average range, and not in the impaired range.  Id.  The objective test results conflicted with Cummings' claims that she suffered greatly from short-term memory loss.  Although Dr. Taylor evaluated Cummings as suffering from moderate and chronic depression, his overall conclusion was that Cummings did not present as having significant psychopathology or cognitive impairment that would preclude an effective and consistent work effort.  Id.  Plaintiff's test results indicated she would have no significant difficulty performing simple or complex tasks, completing a normal workday, or interacting with co-workers or the public.  Id.

Dr. Horton completed a Physical Residual Functional Capacity Questionnaire for Cummings on August 23, 2006.  Tr. 257.  In the functional capacity report, Dr. Horton diagnosed Cummings with severe depression and fatigue, and hyperthyroidism.  Id.  The symptoms were listed as mild dizziness, profound fatigue and depression, poor concentration, and impaired memory.  Id.  Dr. Horton's clinical findings included depressed affect, decreased motivation, forgetting appointments, and trouble getting out of bed in the morning.  Id.  In her functional assessment of Plaintiff, Dr. Horton found that Plaintiff is incapable of even "low stress" jobs; can sit for one hour continuously and four hours total in an eight-hour workday; can stand for thirty minutes continuously and two hours total in an eight-hour workday; requires periods of walking around every thirty minutes; and requires unscheduled breaks three times per day for about thirty minutes to one hour.  Tr. 259-260.  Based on these limitations, Dr. Horton concluded that Cummings is likely to be absent from work more than four times per month.  Tr. 262.

### 3. Disability Report

Cummings' daughter completed an "Adult Third Party Function Report" on January 18, 2005, in which she described her mother as able to do the laundry, clean the house, prepares meals, and babysit her one-year-old baby when Hampton has to leave the house.  Tr. 120.  She also noted that Cummings is frequently tired, easily distracted, has poor vision, often forgets, and sometimes takes very long to complete simple household activities.  Tr. 119, 123.

### 4. Vocational Expert's Testimony

The vocational expert ("VE") Gerald Belchick testified at Cummings' hearing about Cummings' history of working in general clerical jobs, which the VE characterizes as semi-skilled and sedentary. Tr. 333. The VE described Cummings' position as a scheduling clerk for a cable company as semi-skilled and sedentary. Tr. 334. Cummings' position as caretaker for elderly people was unskilled and required medium exertion.

The ALJ posed a hypothetical to the VE asking whether there were jobs in the national economy for someone with the capacity for simple, repetitive light work with no public contact, and occasional interaction with co-workers. Tr. 341. The VE answered that assembly-type jobs met the ALJ's hypothetical criteria, and that such jobs are present in abundance locally, in Oakland, with 2,300 at the light exertion level, and 1,600 at the sedentary level. Tr. 343. The VE also stated that packing or packaging jobs would meet the ALJ's criteria, and that there are 2,100 such jobs present locally at the light exertion level, and 1,100 at the sedentary level. Tr. 344. The VE conceded, however, that if an individual had to take as many as three 30 to 60 minute unscheduled breaks per day, that the jobs he mentioned in the hypothetical would be unavailable. Tr. 345-346. When the VE was asked what the impact on job availability would be if an individual's attention and focus were impaired for as much as one third of the workday, the VE responded that it would be "too much." Tr. 346.

### C. THE ALJ'S FINDINGS

After considering the entire record, the ALJ made the following findings regarding Cummings' alleged disability:

1. The Claimant has not engaged in substantial gainful activity since September 1, 2002, the alleged onset date.

2. The Claimant has the following severe impairments: hyperthyroidism (Graves' disease), diabetes mellitus, and depression.

3. The Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1.

4. The Claimant has the residual functional capacity to lift and carry up to ten pounds frequently and up to twenty pounds occasionally, walk and/or stand six hours in an eight-hour workday, and sit six hours in an eight-hour workday. In addition, she is limited to work activity with no public contact, only occasional contact with co-workers, and simple repetitive tasks. In all other respects, the Claimant is not functionally limited.

5. The Claimant is unable to perform any past relevant work.

6. The Claimant was born on June 10, 1953 and was fifty-one years old, which is defined as an individual approaching advanced age, on the date the application was filed.

7. The Claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the Claimant is "not disabled," whether or not the Claimant has transferable job skills.

9. Considering the Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Claimant can perform.

10. The Claimant has not been under a "disability," as defined in the Social Security Act, since November 18, 2004, the date the application was filed. Tr. 18-23.

Accordingly, the ALJ concluded that Cummings was not disabled, and therefore was ineligible for SSI benefits.

## II. LEGAL STANDARD

A district court may overturn a decision of the Commissioner of the Social Security Administration to deny benefits only if it is not supported by substantial evidence, or if the decision is based on legal error. See 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Bray v. Comm'r Soc. Sec., 554 F.3d 1219, 1222 (9th Cir. 2009). The Ninth Circuit defines substantial evidence as "more than a scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.

Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). The Commissioner's decision though cannot be affirmed simply by isolating a specific quantum of supporting evidence. Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998). Rather, the reviewing court must "consider the record as a whole, weighing both the evidence that supports and evidence that detracts" from the Commissioner's conclusion. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001).

## III.   ANALYSIS

In order to qualify for disability benefits, a plaintiff must prove she has a disability, which is defined under the Social Security Act as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A); see also Stout v. Commissioner, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The ALJ follows a five-step sequential analysis to determine whether a claimant is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, i.e., working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1 (the Listing of Impairments found at 20 C.F.R. Pt. 4, Subpt. P, App. 1)? If so, the claimant is disabled. If not, the inquiry proceeds to question 4.

4. Can the claimant still perform her past relevant work? If so, the claimant is not disabled. If not, the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work the claimant can do? If so, the claimant is not disabled. See Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§404.1520, 416.920.

The claimant carries the initial burden of proving a disability in steps one through four. Burch, 400 F.3d at 679.  If the claimant carries her initial burden, the burden shifts to the Commissioner to establish that the claimant can perform a significant number of other jobs in the national economy.  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002).   The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  Id.  If the Commissioner meets this burden, the claimant has failed to establish disability.  Id.  If a claimant is found to be "disabled" or "not disabled" at any step in the sequence, there is no need to consider subsequent steps.  See Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005).

### A. THE ALJ FOLLOWED 20 C.F.R. § 404.1520A IN EVALUATING PLAINTIFF'S MENTAL IMPAIRMENT

Plaintiff claims the ALJ erred in his evaluation of Plaintiff's impairment by failing to use the "special technique" (also known as the "B criteria") for evaluating the severity of mental impairment for adults, outlined in 20 C.F.R. § 404.1520a.  The steps set forth in 20 C.F.R. § 404.1520a are used to assess whether a mental impairment is severe at step two of the evaluation, and whether a mental impairment meets or equals a listed impairment at step three of the five-step evaluation.  "That step determines whether a claimant is disabled by comparing the claimant's impairment to impairments listed in an appendix to the regulations ("listed diagnoses").  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 20 C.F.R. § 416.925.  Each listed diagnosis consists of clinical findings listed under paragraph A ("paragraph A criteria") and functional limitations listed under paragraph B ("paragraph B criteria").  Together, the criteria define the severity of the impairment.  Each listed diagnosis requires that a claimant exhibit a set number of criteria in both paragraph A and paragraph B in order to be found disabled. The criteria may themselves require the claimant to exhibit a set number of characteristics.  If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990) (citations omitted), the claimant is conclusively presumed to be disabled, Baxter v. Sullivan,

1   923 F.2d at 1395; 20 C.F.R. §§ 404.1520(d), 416.920(d); see generally Bowen v. Yuckert, 482
2   U.S. 137, 140-42 (1987); Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993).

The specific process of evaluating the B criteria involves rating the four functional categories of activities of daily life; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 20 C.F.R. § 404.1520a. The B criteria are used only at steps two and three of the sequential evaluation to determine the severity of the impairment and whether the impairment equals a listed impairment, and are not used as a residual functional capacity assessment.

After finding that the Plaintiff's depression was severe, the ALJ rated the B criteria to determine whether the Plaintiff had an impairment that equaled a listed impairment. Tr. 19. While the Plaintiff satisfied the A criteria (the ALJ found she had severe depression), she failed to show at least two of the B criteria, as required by 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). In order to satisfy the B criteria, Plaintiff would have had to manifest at least two of the B criteria limitations: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). The ALJ determined Plaintiff did not satisfy the B criteria, stating he did "not find evidence, to the marked degree necessary, of the Part B criteria, including limitations in activities of daily living; or difficulties in maintaining social functioning; or difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration." Tr. 19. Thus, contrary to the Plaintiff's assertion, the ALJ explicitly considered the B criteria and determined the Plaintiff had not satisfied them.

In her Reply Memo [Docket No. 21], Plaintiff argues that 20 C.F.R. § 404.1520a requires an ALJ to consider a third criterion, the claimant's residual functional capacity, where the mental impairment is severe, but neither meets or is equivalent to a listed impairment. Plaintiff claims the ALJ erred by not considering Plaintiff's residual functional capacity. However, the ALJ did consider the Plaintiff's residual functional capacity at section four of his opinion, stating Plaintiff has the residual functional capacity to lift and carry up to ten pounds

1  frequently and up to twenty pounds occasionally, walk and/or stand six hours in an eight-hour
2  workday, and sit six hours in an eight-hour workday.  Tr. 19.  The ALJ also found that Plaintiff
3  is limited to work activity with no public contact, only occasional contact with co-workers, and
4  simple repetitive tasks.  Id.  While consideration of residual functional capacity may be
5  required by 20 C.F.R. § 404.1520a, the ALJ has clearly met this requirement.

       **B.**     **THE ALJ GAVE SPECIFIC AND LEGITIMATE REASONS FOR REJECTING DR. HORTON'S FUNCTIONAL ASSESSMENT**

8         The medical opinions of treating physicians are generally afforded great weight as these
9  doctors are in a unique position in terms of their familiarity with claimants as individuals, and
10 assess the claimant's problems.  See Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987);
11 Embrey v. Bowen, 849 F.2d 418, 421-422 (9th Cir. 1988).  However, the treating physician's
12 opinion is not binding on the ALJ and the ALJ may disregard the opinion whether or not it is
13 controverted.  See Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1194-1195 (9th Cir. 2004);
14 Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ must provide specific
15 and legitimate reasons based on substantial evidence in the record for rejecting a treating or
16 examining physician's opinion.  See Andrews, 53 F.3d at 1043; Murray v. Heckler, 722 F.2d
17 499, 502 (9th Cir. 1983).  "The ALJ can meet this burden by setting out a detailed and
18 thorough summary of the facts and conflicting clinical evidence, stating his interpretation
19 thereof, and making findings."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  "The
20 ALJ must do more than offer his conclusions.  He must set forth his own interpretations and
21 explain why they, rather than the doctors', are correct."  Embrey, 849 F.2d at 421-422.

22        The ALJ gave specific and legitimate reasons for rejecting Dr. Horton's opinion. The
23 ALJ's rejection of Dr. Horton's opinion was based  "first[ly] and primar[ily]" on the medical
24 evidence.  Tr. 20.  The ALJ considered the Plaintiff's extensive history of hospital and clinic
25 visits, laying out a detailed summary of the medical facts.  The fact that the Plaintiff frequently
26 missed doctor's appointments and failed to get the treatment that could allow her to work again
27 weighed heavily in favor of a finding of non-disability.  Id.  Dr. Taylor's report concluding
28 Plaintiff would have no difficulty working in a structured work environment or completing a

1  normal workday also weighed heavily in the ALJ's decision . Tr. 21.  A third influential factor
2  was  ALJ Plaintiff's daughter's statements that Plaintiff is able to take care of her personal
3  needs, clean the house, do laundry, drive a car, do grocery shopping, and take care of her one-
4  year old granddaughter.  Id.

5        Plaintiff fails to evaluate the ALJ's recitation and interpretation of all the medical facts
6  and simply states that a single assessment by Dr. Horton of the Plaintiff, taken in conjunction
7  with progress notes and the like, show the necessary clinical findings.  However, as discussed
8  above, the medical record supports those of the ALJ's interpretations that are in conflict with
9  Dr. Horton's.  Moreover, the record demonstrates that the ALJ did not merely offer his
10 conclusions, which properly set out a detailed and thorough summary of the relevant medical
11 facts, stated his interpretions thereof, and made findings.  The Court finds that the ALJ met the
12 burden for rejecting a treating or examining physician's opinion under Magallanes, 881 F.2d at
13 751.

14       Where evidence is susceptible to more than one rational interpretation, it is the ALJ's
15 conclusion that must be upheld.  Andrews, 53 F.3d at 1039-40; Burch, 400 F.3d at 679.  Here,
16 the ALJ's conclusion that Plaintiff is not impaired is rational and supported by the evidence.

17     **C.**    **THE ALJ GAVE CLEAR AND CONVINCING REASONS FOR DISCOUNTING PLAINTIFF'S CREDIBILITY**
18

19       If there is some medical evidence of an underlying impairment, the ALJ may not
20 discredit a claimant's testimony as to severity of symptoms merely because they are
21 unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-348
22 (9th Cir. 1991) (en banc).  Unless there is evidence that the claimant is malingering, the ALJ's
23 reasons for rejecting the claimant's testimony must be clear and convincing.  Lester v. Chafer,
24 F.3d 821, 834 (9th Cir. 1995).  In rejecting the claimant's testimony, the ALJ must identify
25 explicit testimony that is not credible and specific evidence that undermines the claimant's
26 complaints.  Id.  General findings are insufficient.  In weighing the claimant's credibility, the
27 ALJ may consider her reputation for truthfulness, inconsistencies with her testimony or
28 conduct, her daily activities, her work record, and testimony from physicians and third parties

concerning the nature, severity, and effect of the claimant's symptoms.  Smolen, 80 F.3d at 1284.

While there is no evidence of the Plaintiff malingering in this case, the ALJ's reasons for rejecting her testimony are supported by caselaw.  In Fair v. Bowen, 885 F.2d, 597, 603 (9th Cir. 1989), the Court upheld the ALJ's credibility determination based on evidence of unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.  Here, the ALJ articulated that the combination of Plaintiff's missed appointments (November 28, 2005, February 13, 2006, June 2, 2006), apparent lack of compliance with her medications (Zoloft), and repeated rejection of Dr. Horton's offer to refer her to counseling for her reported depression, led him to conclude, in part, that her allegations are not fully credible. Tr. 20-21.

The ALJ articulated additional adequate reasons for discounting Plaintiff's testimony as to the severity of her impairment pain testimony.  First, Plaintiff admitted her ability to take care of her 1 year-old granddaughter, handle her daily personal needs, do housework, cook, do laundry and drive.  Tr. 20, 328-329.  Second, Dr. Taylor's report indicated that Plaintiff's cognitive functions and memory are within normal limits and she presents no significant psychopathology or cognitive impairment that would preclude an effective and consistent work effort, be it simple and routine tasks or complex detailed tasks.  Tr. 172.

The ALJ is permitted to consider daily living activities in his credibility analysis of her.  Burch, 400 F.3d at 680.  In the Ninth Circuit, if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities.  See Fair, 885 F.2d at 603; see also Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work); Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2005) (claimant's ability to take care of his ailing sister was good reason for the ALJ to discount the claimant's testimony on the extent of his disability); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (claimant's ability to care for her young children, cook, do laundry, maintain

the house, and attend therapy and other meetings undermined her testimony on the severity of her disability); Thomas, 278 F.3d at 959 (holding the ability to perform daily activities such as cooking, washing dishes, and shopping indicated claimant was not as disabled as claimed and could perform light work).

In addition, objective medical findings that conflict with a claimant's testimony may be taken into account in evaluating the claimant's credibility. Burch, 400 F.3d at 558. Here, Dr. Taylor's test results indicated average, or at worst low average, memory and intelligence scores, conflicting markedly with Plaintiff's claims of disabling memory loss and inability to interact with people. Tr. 170-171. Dr. Taylor's reports found specifically that the Plaintiff's "current objective test results are not consistent with her subjective reports," and "her memory is not within the impaired range." Tr. 172. Clearly the Plaintiff's objective medical history conflicts with her subjective evaluations of the severity of her impairment, and the ALJ properly took this discrepancy into account in evaluating the Plaintiff's credibility.

Even if the evidence of daily activities admits an interpretation that is favorable to Plaintiff, so long as the ALJ's interpretation was rational, the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." Magallanes, 881 F.2d at 750. Such is the case in the instant action, and the Court defers to the ALJ's evaluation of the objective medical evidence as well as the credibility of Plaintiff's testimony to support his conclusion that her impairments did not preclude her from performing a range of light work. Tr. 21.

IV.     CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Summary Judgment [Docket No. 19] is DENIED and Defendant's Cross Motion for Summary Judgment [Docket No. 20] is GRANTED.  The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: September 4, 2009

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge